IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| ILISA R. THOMAS | : | CIVIL ACTION |
|---|---|---|
| | : | |
| v. | : | |
| | : | |
| ST. MARY MEDICAL CENTER, et al. | : | NO. 13-3219 |

## MEMORANDUM

Ditter, J.                                                                 May 23, 2014

Plaintiff, Ilisa Thomas, brings this employment discrimination action against her former

employer, St. Mary Medical Center, and three of its employees, Susan Freiberg, Donna Marino,

and K. Sibel,[1] in their individual and official capacities.  Thomas alleges race and disability

discrimination, retaliation, and other causes of action under 42 U.S.C. § 1981, Title VII of the

Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), the Family and Medical

Leave Act ("FMLA"), and the Pennsylvania Human Relations Act ("PHRA").  For the reasons

discussed below, defendants' motion to dismiss is GRANTED IN PART and DENIED IN

PART.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Thomas, who is African-American, was employed by St. Mary Medical Center for

approximately five years, from September 2007 to September 2012.  She held the position of

Patient Access Clerk and worked in various departments within the hospital during her

employment.  Thomas' immediate supervisor was defendant, Susan Freiberg, Director of Access

Operations.

---

[1] Thomas does not know this defendant's first name and the defendants do not indicate what it is in their filings.

In January 2012, Thomas and her co-workers attended a meeting where they learned that the hospital was undergoing a reorganization and, as a consequence, she and her co-workers needed to reapply for their jobs. Thomas and her co-workers also learned that during this reapplication period they would have the opportunity for promotion to a "lead" position. Thomas reapplied for her job and applied for a promotion to "Evening Lead Patient Access Clerk." *Compl.* ¶ 26.

Thomas alleges that she was qualified for the promotion, according to the posted job description and requirements, which included being state-certified as a Certified Healthcare Access Associate. Thomas contends that she was the only one of her three co-workers that had the required certification, she had satisfactory work performance, and that she had experience working within nine different departments at St. Mary Medical Center. *See id.* ¶¶ 28, 30. According to the complaint, Thomas was not interviewed for the promotion despite meeting the job qualifications, while Caucasian applicants, who were less qualified in terms of experience and the requisite certification, were interviewed and eventually promoted. *See id.* ¶¶ 29-30, 33, 66.

In March 2012, Thomas was told she would be transferred to a different department, but was not informed about the status of her promotion application. Thomas contends that after she made multiple attempts to receive an answer from Freiberg on the status of her application, she finally learned on March 30, 2012, that she was not getting the lead position. *See Compl.* ¶¶ 35-40. Freiberg explained to Thomas that she was not promoted because she had "three write ups." *Id.* ¶ 41. Plaintiff alleges that Caucasian applicants, who were interviewed for the promotion, had "write-ups and adverse disciplinary histories." *Id.* ¶ 43.

2

Moreover, Thomas alleges that after she contested that she had a disciplinary history that would prevent her from being interviewed, Freiberg offered a "new reason" for her denial, stating that Thomas had a problem being "buddies" with her colleagues. *Id.* ¶ 45. During this conversation, Thomas told Freiberg that this was the third time Freiberg denied her a promotion, despite her qualifications and good work performance. Freiberg had no response.

Thomas contends her disciplinary history did not disqualify her from interviewing for the promotion. In fact, Thomas alleges that right after meeting with Freiberg, she spoke with Courtney Burnett, a representative from the Human Resources department, who told her that the write-ups in her file should not have prevented her promotion, since it was St. Mary Medical Center's policy to only consider disciplines within the 90 days preceding the promotion decision, and none of her write-ups fell within that time period. *Id.* ¶¶ 52-53. Thomas alleges that she had no such disciplines in the 90 days prior to March 2012, the earliest the promotion decision could have been made. *Id.* ¶¶ 53-54. Indeed, Thomas contends that she eventually obtained copies of write-ups in her file,[2] and of the three write-ups cited by Freiberg, all of which were for billing or other administrative errors, two were given to Thomas and all of her co-workers in the same position, and all three of them were issued more than 90 days before the promotion decision. *Id.* ¶¶ 70-73.

On or about April 5, 2012, Thomas met with defendant, Donna Marino, Director of Human Resources. During that meeting, Thomas complained about being denied the promotion despite her qualifications and specifically explained how the write-ups relied upon by Freiberg were expired according to St. Mary Medical Center's policies. *See Compl.* ¶¶ 66-67. She pointed out that her write-ups were no different than those of Caucasian employees who were

---

[2] Thomas asserts that she asked for "all" write-ups in her file and was only given three. I assume the three write-ups are those referred to by Freiberg.

3

interviewed and eventually promoted. *Id.* Thomas also mentioned the fact that Freiberg had denied her a promotion on three prior occasions, and that she believed Freiberg's "statements and actions were racially-motivated, and that she was being subjected to disparate treatment as compared to Caucasian employees in the interview and promotion process." *Id.* ¶ 62.

Shortly thereafter, Marino emailed Thomas to say that, after discussing the matter with Freiberg, she agreed with Freiberg's decision, because the promotion she applied for required "supervisor/lead experience." *Id.* ¶ 75. Thomas alleges that such a requirement was never listed in the job posting nor was it mentioned during any of her previous discussions with Freiberg. *Id.* ¶¶ 75-76. Thomas contends, however, that multiple Caucasian candidates who were interviewed and promoted did not have supervisory or leadership experience. *Id.* ¶ 78.

Next, Thomas alleges that in May 2012, she informed the defendants that she was being treated for "depression, anxiety disorders and attacks, and suicidal ideations." *Id.* ¶ 83. Thomas contends that she provided written documentation and certification of her medical conditions from her treating physicians. *Id.* ¶¶ 84, 87. She alleges that the defendants responded by providing her with FMLA forms and approving her FMLA leave.[3] Defendants did not challenge the diagnoses or question her need for treatment. Thomas took leave from May 4, 2012, to July 27, 2012. Thomas alleges that the May 9, 2012 notice approving her leave notified her that her position was not guaranteed beyond July 27, 2012, and that she must be "medically cleared (i.e. fully healed)" before she would be permitted to return to work. *Id.* ¶ 96.

Nevertheless, Thomas alleges that the defendants failed to offer her a reasonable accommodation or engage in an interactive process in order to determine a reasonable accommodation that would have allowed her to continue her work even with her disability. *Id.* ¶¶ 91-93. In other words, Thomas felt the defendants "simply processed [her] out" on FMLA

---

[3] It is unclear from reading the complaint whether Thomas actually asked for the FMLA leave.

4

leave rather than engage in the appropriate interactive process to come up with a solution permitting her to work "even if not 'fully healed.'"  *Id.* ¶¶ 94, 97.

According to her complaint, on July 23, 2012, Thomas' physician "recertified that [her] disabilities persisted" and she sought a "scheduling accommodation beyond July 27, 2012."  *Id.* ¶ 98.  After discussions with defendants Marino and Sibel, St. Mary Medical Center's Benefits Coordinator, Thomas alleges that she was denied an extension of her FMLA leave and was never offered any other reasonable accommodation or "interactive dialogue" with her or her physician to determine an accommodation allowing her return to work.  *Id.* ¶¶ 99-101.

In an attempt to avoid losing her job, Thomas drove to work on July 27, 2012, but before she arrived she received a call on her cell phone from Sibel telling her she could not return because defendants had received a note from her physician that plaintiff's "disabilities persisted."  *Id.* ¶ 103.  Thus, according to Thomas, she was not allowed to come back to work, was not allowed an extension of her leave, and defendants refused to discuss arrangements to allow her to resume work even with her ongoing disabilities.  Indeed, Thomas alleges that, on July 31, 2012, she and her mental health provider communicated to defendants a "proposed accommodation[4] that would allow Plaintiff to resume working," but that requested accommodation was denied.  *Id.* ¶¶ 109-110.

Finally, on August 16, 2012, Thomas alleges that she was "released to go back to work" by her physician, of which she informed defendants, but was told her position was no longer available.  *Id.* ¶¶ 111-112.  Plaintiff was "officially terminated" on September 4, 2012.  *Id.* ¶ 117.

On June 11, 2013, Thomas commenced the present action by filing a sixteen count complaint.  Thomas filed suit within 90 days of receiving her "Right to Sue Notice" from the Equal Employment Opportunity Commission ("EEOC") which was dated March 21, 2013, and

---

[4] Thomas does not disclose what that proposed accommodation was.

she states that she has timely satisfied all of the administrative procedural prerequisites to filing

suit under the relevant federal and state statutes. Defendants attached to their motion to dismiss

a copy of the "Charge of Discrimination" filed with the EEOC, signed by Thomas and dated

April 10, 2012.[5] *See Defs.' Mot. Dismiss,* Exh. A. Thomas does not allege any additional

charges were made with the EEOC or the Pennsylvania Human Relations Commission

("PHRC"), nor does she allege any amendments were made to the copy that has been submitted

by the defendants.

## II.   STANDARD OF REVIEW

The standard of review for a motion to dismiss is well established. Under Federal Rule

of Civil Procedure 12(b)(6) a complaint shall be dismissed for failure to state a claim upon which

relief can be granted only if it is clear that no relief could be granted under any set of facts that

could be proved consistent with the allegations. I must accept as true the facts and allegations

contained in the complaint and all reasonable inferences drawn therefrom and view the facts in

the light most favorable to the non-moving party.

## III.   DISCUSSION

In their motion to dismiss, the defendants seek dismissal of several claims in their

entirety and parts of other claims. Defendants argue that Thomas has failed to adequately plead

certain claims and failed to exhaust her administrative remedies as to others. Both arguments are

properly raised under Rule 12(b)(6).

---

[5] I may consider a document offered by the defendants as part of their motion to dismiss as long as the plaintiff's claims are based on it. *Pension Benefit Guaranty Corp. v. White Consolidated Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

6

## A.    Race Discrimination

Thomas' claims for disparate treatment based on her race include Count 1 (Title VII),
Count 3 (42 U.S.C. § 1981), and part of Count 13 (PHRA).[6]  Thomas contends that she was
qualified for the "evening lead" position but was not interviewed and did not receive the
promotion, while similarly-situated Caucasian employees were interviewed and eventually
promoted.

Defendants do not challenge the sufficiency of Thomas' claims pertaining to the
allegations that she was discriminated against on the basis of her race when denied the promotion
to evening lead.  Rather, they argue that her claims must be limited to the promotion decision
and cannot include the other adverse actions referenced in her complaint.  *See, e.g.*, *Compl.* ¶ 133
("Defendant intentionally discriminated against Plaintiff on the basis of her race (African
American) by subjecting her to multiple adverse employment actions, including but not limited
to denying her a promotion, failing to even interview and/or consider her for a promotion,
denials of seniority recognition, denials of advancement opportunities, and disparate and
retaliatory treatment.").  Defendants contend that Thomas did not include those claims in her
EEOC charge and therefore, they are not sufficiently exhausted.  Alternatively, the defendants
contend that they fail to sufficiently state a claim under Rule 12(b)(6).

There is no dispute that Thomas has sufficiently pled a discrimination claim based on
race, as she has set forth the necessary elements of a *prima facie* disparate treatment claim – that
is, she is a member of a protected class, was qualified for the position, suffered an adverse
action, under circumstances giving rise to inference of discrimination.  *See Jones v. Sch. Dist. of*
*Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999).  The issue is which adverse action she is alleging as

---

[6] The analysis for claims brought under Title VII is the same for that under 42 U.S.C. § 1981 and the
PHRA.  Count 13 includes Thomas' allegations of disparate treatment based on race and disability in violation of the
PHRA.  My analysis in this section pertains only to the claim of race discrimination.

7

the basis for her claim. Not all acts by an employer qualify as "adverse employment actions." An actionable adverse action is one that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Storey v. Burns Intern. Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (internal citations and quotations omitted).

It is unclear whether Thomas is referring to multiple incidents or is using different phrases to describe the results of the same adverse employment action. For instance, the denial of promotion to evening lead (an uncontested adverse action and one supported by factual allegations in the complaint) stemmed from not getting an interview and not being considered for the promotion, and the result of not getting the promotion may have included denial of seniority recognition and advancement opportunities. If Thomas is describing the circumstances surrounding the denial of promotion or the resulting consequences of not getting that promotion, then the requirements of administrative exhaustion and sufficiency of the claim are satisfied.

If, however, Thomas is attempting to introduce completely separate incidents as different adverse actions, ones wholly unrelated to the denial of promotion to evening lead, she is precluded from doing so because no other adverse actions were included in her EEOC complaint and they would not be administratively exhausted. In short, Thomas will not be able to introduce evidence pertaining to any other adverse actions on summary judgment or at trial. Moreover, there is nothing in Thomas' complaint filed in this federal lawsuit describing the occurrence of any other adverse action due to her race, other than the denial of promotion to evening lead.

Nonetheless, I find that plaintiff has sufficiently alleged a disparate treatment discrimination claim based on race under Title VII, § 1981, and the PHRA. Therefore, I will

deny defendants' motion to dismiss as it pertains to Thomas' race discrimination claims against St. Mary Medical Center under Counts 1, 3, and 13.[7]

Finally, there is the issue of individual liability.  Defendants seek dismissal of Counts 3 and 13 against the individual defendants.[8]  First, they argue that these claims against the individuals have not been administratively exhausted because St. Mary Medical Center is the only respondent named in the EEOC charge.  Alternatively, they argue that individual employees cannot be held liable for discrimination under the PHRA, except for aiding and abetting, which is a claim discussed later.

Thomas brings her § 1981 claim, set forth in Count 3, against individual defendants Marino and Freiberg, not Sibel.[9]  While both individuals are named in the EEOC charge's attached page describing the discrimination, I find that only defendant Freiberg is referenced with sufficient detail to put her on notice of the facts and her connection to the discriminatory promotion decision. *See Schafer v. Bd. of Pub. Educ.*, 903 F.2d 243, 252 (3d Cir. 1990) (recognizing exception to exhaustion requirement as to parties not named as respondents in the EEOC action where parties received notice and there is a shared commonality of interest with the named party); *Huggins v. Coatesville Area School Dist.*, 2008 WL 4072801, at *6 (E.D. Pa. Aug. 27, 2008) (citing district court cases within Third Circuit that have found plaintiffs to have exhausted administrative remedies with respect to individual defendants if the body of the EEOC complaint named the defendants and described the acts of discrimination committed by them). Therefore, Thomas' § 1981 claim is sufficiently exhausted against defendant Freiberg.

---

[7] Thomas stipulates that she is not entitled to punitive damages under the PHRA.  Therefore, those portions of her PHRA claims seeking punitive damages shall be stricken.

[8] Count 1 is against defendant St. Mary Medical Center only.

[9] Individuals may be held liable under § 1981. *Al-Khazraji v. Saint Francis College*, 784 F.2d 505, 518 (3d Cir. 1986).

In contrast, defendant Marino is only mentioned briefly and in reference to Thomas'
conversation with her "regarding not being selected for interview for the position." *See Defs.'
Mot. Dismiss,* Exh. A.[10]  This one sentence does not describe the acts of discrimination Marino is
alleged to have committed, nor does it describe with sufficient detail her connection to the
alleged discriminatory promotion decision.  Thus, defendant Marino is dismissed from Count 3.

Turning to Count 13, Thomas' claim for race discrimination under the PHRA is brought
against St. Mary Medical Center as well as all individual defendants.  However, individual
employees cannot be liable for disparate treatment discrimination under the PHRA, except for
claims brought under § 955(e) for aiding and abetting the unlawful discriminatory practices of
the employer. *See Dici v. Commw. of Pa.*, 91 F.3d 542, 552 (3d. Cir. 1996); 43 P.S. § 954
(definition of "employer" does not include individuals); *id.* § 955(a) (prohibiting "any employer"
from discriminatory action).[11]  Therefore, the individual defendants are dismissed from Count
13.

## B.    Disability Discrimination

Thomas' complaint sets forth several claims based on disability discrimination.  Thomas
alleges that she was disabled, in that she suffered from multiple mental health disorders, and that
she notified defendants of her disabilities and her need for a reasonable accommodation of her
disabilities, but defendants failed to engage in an interactive process with her to determine a
reasonable accommodation and then they discriminated and retaliated against her because of her

---

[10] Thomas' misspelling of defendant Marino's name, or anything else in her EEOC charge, has nothing to
do with my analysis.

[11] In her brief, Thomas cites to §§ 955(d) and 955(e) for their use of the term "any person."  However,
§ 955(d) refers to a retaliation claim and 955(e) is an aiding and abetting claim.  Section 955(a), which is the basis
for Thomas' disparate treatment race discrimination claim set forth in Count 13, prohibits discrimination by "any
employer," which is defined differently than "any person" and does not include an individual employee.  Thomas
acknowledges this distinction in her brief. *See Pl.'s Br.* at 78.

disabilities by firing her. Defendants argue that all of Thomas' claims related to disability

discrimination, under the ADA (Counts 9-12) and the PHRA (part of Count 13 and all of Count

15), must be dismissed because they are not administratively exhausted.[12]

"[S]uits in the district court are limited to matters of which the EEOC had notice and a

chance, if appropriate, to settle." *Anjelino v. New York Times Co.*, 200 F.3d 73, 93 (3d Cir.

1999) (citing *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976)). "Only

claims that are 'fairly within the scope of the prior administrative complaint, or the investigation

arising therefrom' can be considered to have been exhausted." *Wilson v. Philadelphia Hous.*

*Auth.*, 2008 WL 699001, at *4 (E.D. Pa. Mar. 12, 2008) (internal quotations omitted). While it is

true that the lawsuit is not limited to the four corners of an earlier administrative charge, and it is

improper to take a hyper-technical view of the EEOC charge, I must also consider the purpose

behind the exhaustion rule – which is to allow the EEOC an opportunity to investigate the

alleged discrimination and attempt conciliation without formal litigation. *See Ostapowicz*, 541

F.2d at 398-399.

Under this circuit's standard, a claim will be considered sufficiently exhausted if it is

"fairly within the scope" of the EEOC charge or the investigation which can reasonably be

expected to grow out of that administrative complaint. *See Antol v. Perry*, 82 F.3d 1291, 1295

(3d Cir. 1996). Accordingly, courts should consider not only the claims explicitly referenced in

the EEOC charge, but also acts encompassed within the charge's broad terms or those fairly read

as interchangeable with the described discrimination, as well as any claims that are closely

related to those included in the administrative complaint.

---

[12] Defendants make separate arguments for dismissal of Count 12 and 15 (wrongful discharge under the ADA and PHRA) arguing that there is no such claim and they also argue that there can be no compensatory or punitive damages for an ADA retaliation claim under Count 11. Since I am dismissing these claims on other grounds there is no need to discuss these arguments.

11

Thomas' claims relating to disability discrimination and failure to accommodate under the ADA and PHRA are not fairly within the scope of her EEOC complaint or the resulting investigation.[13]   In her EEOC charge, Thomas provided a detailed description of the circumstances surrounding her application for the evening lead promotion, her qualifications for the position, and the defendants' pretextual explanation for denying her an interview for the position.  She explicitly stated that she believed she was the victim of discrimination "because of [her] race (black) in violation of Title II of the Civil Rights Act of 1964, as amended, in that Respondent failed to consider and select [her] for an interview for the Lead E.R. position." *Defs.' Mot. Dismiss,* Exh. A.  Thomas further alleged less favorable treatment as compared to two white employees who she identified by name.  *See id.*  Thomas did not mention depression, suicidal thoughts, or anything else related to the ADA or PHRA claims based on disability discrimination, nor did she allege that she suffered from these conditions as a result of her claimed discrimination.  She did not mention her health in any way.  The dates and individuals mentioned corresponded only with the promotion decision, and Thomas completed the form *before* the alleged disability discrimination took place.  Finally, Thomas checked only the box labeled "race" to describe the type of discrimination at issue in her EEOC charge.[14]

Thus, this is not a case where Thomas is using different terminology in her civil action or adding federal claims that can be fairly considered an explanation of the original charge of race discrimination at the administrative level or claims that "merely buttress" an earlier claim described in the charge.  *See Pl.'s Br.* at 28-30 (citing, for example, *Anjelino*, 200 F.3d 73, where

---

[13] The parties have not provided any information about the EEOC's investigation into Thomas' charge. Therefore, I can only consider the scope of what a "reasonable investigation" by the agency would have been.

[14] I consider Thomas' failure to check the box for "disability" and the "ADA" as only one of many factors leading to my conclusion.

12

plaintiff's sexual harassment claims were found exhausted even though she described an "abusive atmosphere" in her charge). Thomas did not describe general circumstances of discrimination or use broad terms to describe a scenario where she felt discriminated against but for indeterminate motives. *See Hicks v. ABT Assoc.*, 572 F.3d 960, 965, 967 (3d Cir. 1978) (finding that the district court should have heard claims of sex discrimination, even though the EEOC charge was limited to race discrimination and retaliation, partly because the plaintiff alleged race discrimination in broad terms and there was a close nexus between the facts supporting the race and sex discrimination claims).[15]  Rather, she discussed a specific set of facts where she felt treated less favorably than her white co-workers because of her race.  In sum, even reading the charge liberally, the disability claims cannot be considered within the scope of Thomas' EEOC complaint.

Moreover, the disability discrimination claims are not within the scope of a reasonable investigation that would have grown out of the administrative charge. As Thomas' EEOC charge describes only the denial of promotion and a set of facts surrounding what plaintiff perceived to be discrimination based on her race, it cannot be reasonably expected that the EEOC was put on notice as to anything regarding her disabilities,[16] her employer's response to notice of those disabilities, or that there was any causal connection between a disability and the earlier charge of discrimination.  It goes too far to say a reasonable investigation into *race* discrimination, or even more broadly into St. Mary Medical Center's policies concerning

---

[15] Although plaintiff relies on *Hicks*, a key distinguishing fact of that case and one that provided an alternative basis for the court's holding, was that the plaintiff there claimed that he had attempted to amend his administrative charge to include sex discrimination based on facts related to the original charge, but the EEOC improperly refused to accept the amendment. Thomas does not allege that she tried to amend her EEOC complaint or any other facts suggesting the agency's failure to follow its own regulations.

[16] Thomas' arguments in her response brief that defendants "caused" her disabilities are conclusory and speculative statements that are not found in her complaint or supported by any facts in her complaint. Therefore, I will not consider such a claim.

13

promotions or the treatment of African-Americans generally, would have uncovered plaintiff's contentions that she was later being treated unfairly on the basis of a disability. Furthermore, there have been no allegations made that the EEOC's investigation was inadequate or improper.

Finally, merely because Thomas filed her administrative complaint and alleges that she was subsequently subjected to discrimination based on her disability and then terminated while the EEOC investigation was pending, does not automatically bring the disability claims within the scope of the EEOC complaint or investigation.[17]

In *Waiters v. Parsons*, 729 F.2d 233 (3d Cir. 1984), the Third Circuit held that the plaintiff's claim for retaliatory discharge, for which she did not file a separate administrative charge, fell within the scope of the EEOC investigation that arose out of her earlier administrative complaint also alleging retaliation for exercising her rights under Title VII. Thus, the plaintiff in *Waiters* was not barred for failure to exhaust because the "core grievances" in the federal lawsuit and the earlier EEOC complaint were the same. *Id.* at 238. Accordingly, "[r]equiring a new EEOC filing for each and every discriminatory act would not serve the purposes of the statutory scheme where the later discriminatory acts *fell squarely within the scope of the EEOC complaint or investigation.*" *Antol*, 82 F.3d at 1295-96 (distinguishing *Waiters* on facts where plaintiff's disability discrimination charge with the EEOC did not fairly encompass gender discrimination "merely because investigation would reveal that Antol is a man

---

[17] Thomas cites to several cases to support her claim that her disability discrimination allegations ought to be exhausted because they occurred during the "pendency" of proceedings with the EEOC. However, a close look at those cases reveals key differences that set them apart from the facts of this case. For example, in *Ostapowicz*, the plaintiff filed an initial charge with the EEOC alleging sex discrimination and while that investigation was pending, she *filed additional charges* of sex discrimination with the EEOC. 541 F.2d 394. The Court held that the later, additional charges could be considered "explanations of the original charge and growing out of it." *Id.* at 399. What is important is that the EEOC had notice of those subsequent charges and the Court found they "all related to the same general charge originally filed." *Id.* at 399 n.7

14

and the two employees who received the positions were women," when the investigation focused on the gravamen of his administrative complaint, disability discrimination).

Here, Thomas' disability discrimination claims do not fall within the scope of the EEOC complaint or investigation, nor are the core grievances in her disability claims the same as those raised in the EEOC charge. Because I find none of the disability discrimination claims have been administratively exhausted, I must dismiss Counts 9 through 12 and Count 15, as well as the relevant part of Count 13.

## C. Retaliation for Complaints about Race Discrimination

Thomas' retaliation claims include Count 2 (Title VII), Count 4 (§ 1981) and Count 14 (PHRA). Defendants again argue that these claims have not been administratively exhausted, or alternatively, that they fail to state a claim because Thomas has failed to set forth all elements of a retaliation claim, notably causation. A claim for retaliation requires a plaintiff to allege (1) that she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) a causal connection between the two. *See Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006).[18]

---

[18] The adverse actions Thomas alleges as the basis for her retaliation claims vary between her complaint and her brief in opposition to the motion to dismiss. Thomas' complaint states, "as a result of Plaintiff's engagement in the protected activity of reporting race-based discrimination, Defendant retaliated against Plaintiff by subjecting her to multiple adverse employment actions, including but not limited to, denying her a promotion, failing to even interview and/or consider her for a promotion, denials of seniority recognition, denials of advancement opportunities, and disparate and retaliatory treatment." *Compl.* ¶ 148. In her brief, Thomas argues that defendants took adverse actions, in addition to those related to the denial of promotion, in that they refused to provide her with a reasonable accommodation for her disability, they did not allow her to return to her position following her FMLA leave, nor did they engage in the interactive process, and ultimately they fired her. *See Pl.'s Br.* at 44-45. Thomas contends that these adverse actions were in response to her earlier complaints of racial discrimination.

The facts pled in the complaint cannot set forth a claim of retaliation because the adverse actions related to the denial of promotion occurred prior to plaintiff's alleged complaints of discrimination to Marino and she therefore cannot allege causation. Accordingly, I will consider for purposes of the exhaustion discussion, the plausible claim of retaliation based on Thomas' complaint to Marino subsequently followed by the events surrounding her FMLA leave and her eventual termination.

15

As explained above, Thomas' administrative complaint focused entirely on the facts and circumstances surrounding the failure to promote claim and race discrimination.  Not only did Thomas fail to check the "retaliation" box, she presented no facts in support of a retaliation claim, nor could she as the alleged retaliatory acts had not yet occurred.  While Thomas does state that she, "also complained to Donna Miriam, [sic] the Director of Human Resources regarding not being selected for interview for the position," she does not state that she complained to Marino or anyone else about being the victim of discriminatory practices.  In short, her EEOC charge does not fairly encompass a retaliation claim nor would it put the EEOC on notice to investigate a retaliation claim.

Again Thomas relies on the fact that she was subject to adverse actions, namely the defendants' refusal to accommodate her disabilities, their refusal to allow her to return to work after FMLA leave, and her termination, after she filed her EEOC complaint and while the investigation was pending.  In other words, she contends that any reasonable investigation into her charge of race discrimination would have uncovered the defendants' subsequent retaliatory actions.

The Third Circuit, however, has rejected the adoption of a *per se* rule that "any complaint of retaliation occurring during the time when prior EEOC complaints are pending necessarily falls within the scope of those complaints."  *Robinson v. Dalton*, 107 F.3d 1018, 1024 (3d Cir. 1997).  Instead, claims must be examined on a case-by-case basis.  *See id.*  After examining this case by reviewing Thomas' administrative complaint and her allegations in this suit, I find that Thomas' retaliation claims are not fairly within the scope of the EEOC charge or investigation. Thus, Counts 2, 4, and 14 must be dismissed.

16

### D.    FMLA

The FMLA grants eligible employees up to 12 workweeks of leave during any 12-month period because of the birth or adoption of a child, the need to care for a spouse, son, daughter or parent who has a serious health condition, or because of the employee's serious health condition that makes the employee unable to perform the functions of his or her position. 29 U.S.C. § 2612(a)(1). An employee is also entitled, upon expiration of his or her leave, to be restored to the same or equivalent position that he or she held when the leave started. *Id.* § 2614(a)(1). The statute permits an employer to have, as a condition of restoration, a uniform practice or policy of requiring an employee, who took leave because of their own serious health condition, to receive certification from their health care provider that the employee is able to resume work. *Id.* § 2614(a)(4).

The FMLA prohibits employers from interfering with an employee's rights under the statute to take leave and return from leave and contains two distinct provisions protecting those rights. *See id.* § 2615(a). First, an "interference" claim arises from the provision that makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" provided under the FMLA. *Id.* § 2615(a)(1); *Hayduk v. City of Johnstown*, 386 Fed. Appx. 55, 59 (3d Cir. 2010). Second, the Act prohibits an employer from discriminating against or retaliating against an employee for exercising or attempting to exercise FMLA rights. *See* 29 U.S.C. § 2615(a)(2); 29 C.F.R. § 825.200(c). A claim under the latter provision is referred to as a "retaliation" or "discrimination" claim. *Hayduk*, 386 Fed. Appx. at 59.

An interference claim requires Thomas to plead that: (1) she was entitled to benefits under the FMLA; and (2) her employer illegitimately prevented her from obtaining those

17

benefits. *Sarnowski v. Air Brooke Limousine, Inc.*, 510 F.3d 398, 401 (3d Cir. 2007). To set forth a claim of retaliation under the FMLA, Thomas must allege that (1) she invoked her right to FMLA benefits, (2) she suffered an adverse employment decision, and (3) the adverse decision was causally related to her invocation of her rights. *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 508-09 (3d Cir. 2009).

Additionally, the Act prohibits interference with legal proceedings or inquiries relating to an employee's rights. *See* 29 U.S.C. § 2615(b). Under this section, it is unlawful for an employer to discriminate against someone because he or she files a charge or institutes a proceeding under the FMLA, or gives information or testifies in connection with an "inquiry or proceeding" related to any FMLA rights. *Id.*

Thomas' complaint sets forth four separate counts under the FMLA.[19] They are described as follows: (1) "unlawful interference," pursuant to 29 U.S.C. § 2601 *et seq.* (Count 5); (2) "Retaliation for Exercising Rights" under the Act, brought under 29 U.S.C. § 2615(a)(2) (Count 6); (3) "Retaliation for Good-Faith Reporting of Violations under the Act," brought under 29 U.S.C. 2615(b) (Count 7); and (4) "Wrongful Discharge," brought under 29 U.S.C. § 2601 *et seq.* (Count 8).

To begin with, there is no distinct claim for "wrongful discharge" under the FMLA. As noted above, there are two theories of liability against employers for alleged interference with employee rights under the FMLA, and they are set forth in § 2615(a). An employee alleging discharge in violation of the FMLA may proceed under both an interference and retaliation theory. *Hayduk*, 386 Fed. Appx. at 59*; Erdman*, 582 F.3d at 509. Contrary to Thomas'

---

[19] Unlike Thomas' other statutory claims, the FMLA does not require a plaintiff to pursue administrative remedies before filing a complaint in federal court. *Casey v. U.S. Dep't of Treasury*, Civ. No. 07-3324, 2007 WL 4373595, at *2 (E.D. Pa. Dec. 11, 2007) (citing *Churchill v. Star Enterprises,* 183 F.3d 184, 190 (3d Cir. 1999)).

arguments, a claim for wrongful discharge lies as either an interference claim or a retaliation claim under § 2615(a)(1) or § 2615(a)(2), or both.[20]  Thus, Count 8 must be dismissed.

Thomas alleges that she was an eligible employee with a serious health condition entitled to take 12 workweeks of leave.  It is undisputed that Thomas was permitted to take, and did in fact take, 12 weeks leave after notifying defendants of her diagnosed mental health conditions.[21]  Thomas complains, however, that she was not permitted to return to her position or an equivalent position.  She also contends that the defendants subjected her to adverse action, i.e. termination, because she exercised her right to take leave and attempted to return.

More specifically, Thomas alleges that close to the time her leave was set to expire, she and/or her physician contacted the defendants and advised that Thomas' physician "recertified that [her] disabilities persisted" and that she and her doctor sought a "scheduling accommodation beyond July 27, 2012." *Compl.* ¶ 98.  Thomas further alleges that defendants refused to offer her any reasonable accommodation to allow her to return to work, or to discuss with her what accommodations might be available.  Furthermore, Thomas contends that she was told she had to "ask for an extension" of her FMLA leave from defendant Marino, she did so, and that request was denied. *Id.* ¶¶ 99-101.  Thomas asserts that she then drove to work upon the expiration of her FMLA leave so as to avoid losing her job, but she was told she could not return because the defendants had received the note from her physician that her disabilities persisted.

Nonetheless, what Thomas fails to allege – which is critical to state an interference claim under the FMLA – is that she was able to return to work and was therefore entitled to return to

---

[20] Thomas does not cite to a separate provision in the statute or regulations, nor does she cite to any case law in support of her claim that "wrongful discharge" is a distinct claim under the FMLA.  Rather, she cites only to 29 U.S.C. § 2615(a)(1) and related provisions – which is an interference claim.

[21] Both theories of recovery, interference and retaliation, require the plaintiff to allege, as an initial matter, that she was eligible to take leave and she gave her employer adequate notice of her need to take leave.  These elements are not at issue in this case.

19

the same or equivalent position. Nowhere in her complaint does Thomas state that she was able

to work, capable of performing the essential functions of her position or an equivalent position,

or that her physician provided a certification that she was able to go back to work. The FMLA

expressly permits employers to require an employee who took leave because of a serious health

condition to have their physician certify that the employee is able to resume work. *See* 29 U.S.C.

§ 2614(a)(4).[22]  Thomas fails to assert that she had this certification.

What Thomas does allege is that her physician "*recertified* that [her] disabilities

persisted." *Compl.* ¶ 98 (emphasis added).  This statement, in combination with the fact that

Thomas was out of work for 12 weeks because of her serious health condition as well as her

allegation that she was "released to go back to work by her physician" on August 16, 2012,

twenty days <u>after</u> her FMLA leave expired, supports the fact that she has not alleged her ability

to return to work by the time her FMLA leave ran out. *See id.* ¶ 111.  The statute does not

require employers to give their employees extensions of their FMLA leave beyond 12 weeks or

indefinite amounts of time to obtain the required certification.

Moreover, Thomas is attempting to allege an FMLA violation by virtue of the fact that

the defendants failed to offer her a reasonable accommodation. The FMLA does not provide a

cause of action against employers for their failure to offer reasonable accommodations for

known disabilities, as this is a requirement of a different federal statute, the Americans with

Disabilities Act. Thomas' complaint included claims under the ADA, but for the reasons

explained above, she has not exhausted those claims and therefore they were dismissed. Thomas

---

[22] Thomas does not allege that defendants had a policy requiring this certification but they did not apply
that policy uniformly, as required by the statute. While Thomas contends that defendants notified her that she must
be "medically cleared (i.e. fully healed)" before returning to work, and that she was "deceived [] as to her right to
return to work with reasonable accommodation of her disabilities even if not 'cured' or 'fully healed,'" she still does
not allege that her physician certified that she was able to resume work or that she in fact was, at the time her FMLA
leave expired, able to return to work.

cannot assert those claims through the FMLA.  While the regulations interpreting the FMLA refer to an employer's separate obligations under the ADA, they do not incorporate those obligations into the statute and allow an FMLA interference claim to include allegations for potential ADA violations.  *See* 29 C.F.R. § 825.216(c).[23]

For these reasons, Count 5 must be dismissed.  However, this dismissal will be without prejudice.  If Thomas can allege that she was able to return to work and that her physician could have certified as much, then she can amend her FMLA unlawful interference claim.

Thomas' retaliation claim similarly fails.  While she has alleged that she invoked her right to take FMLA leave and she suffered an adverse action, she has not alleged a causal connection because she has not alleged that she was able to return to work and, thus, her termination was not because of her inability to return to work.  Count 6 is therefore dismissed without prejudice for Thomas to amend her complaint in accordance with the above discussion.

Next, Thomas contends that she has sufficiently set forth the elements of a "retaliation for good-faith reporting" claim under 29 U.S.C. § 2615(b).  A retaliation claim under this statutory provision is separate from the retaliation claim discussed above and raised under § 2615(a)(2). This provision is designed to protect those who complain about conduct that is illegal under the FMLA or those who participate in proceedings related to the Act.[24]  Although the actual language of the statute appears to limit protected conduct to that related to a formal proceeding,

---

[23] That section states,

> If the employee is unable to perform the essential functions of the position because of a physical or mental condition, including the continuation of a serious health condition or an injury or illness also covered by workers' compensation, the employee has no right to restoration to another position under the FMLA.  The employer's obligations *may*, however, be governed by the Americans with Disabilities Act (ADA), as amended. . . .

29 C.F.R. § 825.216(c) (emphasis added).

[24] Elements of a retaliation claim under § 2615(b) are that:  (1) plaintiff engaged in protected activity, by opposing a practice made unlawful by the FMLA; (2) adverse action by the employer; and (3) a causal connection between the protected activity and the adverse action.  As Thomas fails to allege the first element, there is no need to discuss the others.

Thomas argues that this provision also protects individuals who have filed or made informal complaints to employers. *See Pl.'s Br.* at 51-52. Indeed, the Third Circuit Model Jury Instructions note that while the Court of Appeals has not yet decided whether there can be a cause of action for retaliation under § 2615(b) where the employee informally opposes an employer's action for violation of the FMLA, case law construing similar language in similar provisions of other employment statutes suggests informal complaints would be considered protected activity.

Nevertheless, it makes no difference here as Thomas fails to allege sufficient facts that she engaged in any protected activity actionable under this provision of the FMLA. Thomas does not allege any facts suggesting she participated in a formal proceeding or inquiry related to possible FMLA violations. Moreover, she does not sufficiently allege facts to support her claim that she complained, formally or informally, to St. Mary Medical Center about any action that she believed violated the FMLA.

While Thomas' brief passionately proclaims that she has "provid[ed] specific facts of her protest against Defendants['] refusal following her leave to allow her to work whether in the same or equivalent position, their refusal to propose or even discuss a reasonable accommodation, their steadfast denial to engage in any kind of interactive dialogue with her or her doctors, and their response to her requests and complaints with a termination," a review of her complaint plainly indicates she has not provided any facts concerning a complaint or protest about FMLA violations, let alone specific facts that could be construed as a complaint. *See Pl.'s Br.* at 53 (citing *Compl.* ¶¶ 87-117, 205-219).

There are no allegations as to whom she complained, when she complained, or what she complained about. One paragraph reciting the element of protected activity under a retaliation

22

claim will not suffice. *See Compl.* ¶ 216 ("Plaintiff, in good faith, reported and complained of these violations of the [FMLA] (interference with her rights and retaliation against her) to Defendants."). As a "formulaic recitation of the elements of a cause of action will not do," I must grant the defendants' motion with respect to Count 7. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). However, if Thomas can allege specific facts to support a retaliation claim under § 2615(b), she may amend her complaint as to this count. Thus, my dismissal will be without prejudice.

The dismissal of the FMLA claims renders Thomas' complaints against the individual defendants moot. However, if Thomas amends her complaint to properly assert her claims under the FMLA, in accordance with my directions above, individual liability under the FMLA and what damages can be sought will be relevant. Therefore, I shall consider these issues here.

Thomas claims two individual defendants, Marino, who was the Director of Human Resources, and Sibel, who was Benefits Coordinator, are individually liable under the FMLA.[25] The term "employer" under the FMLA includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii). "[A]n individual is subject to FMLA liability when he or she exercises 'supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation' while acting in the employer's interest." *Haybarger v. Lawrence Cnty. Adult Probation & Parole*, 667 F.3d 408, 417 (3d Cir. 2012).

In light of the allegations in the complaint, including Marino's and Sibel's job titles and the factual allegations tying both individuals to the processing of Thomas' FMLA leave and to

---

[25] Thomas concedes that she has not sufficiently alleged defendant Freiberg's involvement in the FMLA claims and stipulates that she should be dismissed from those claims. *See Pl.'s Br.* at 69 n. 12. Therefore, the FMLA claims against Freiberg will be dismissed with prejudice.

conversations with her about returning to work, I find that Thomas could assert FMLA claims individually against both Marino and Sibel.

Finally, as to damages, the defendants contend that Thomas cannot recover "compensatory and/or punitive damages under the FMLA . . . [because] these remedies simply are not available under the FMLA." *Defs.' Br.* at 26. With respect to each of her FMLA claims, Thomas specifically demands "compensatory damages in an amount to be determined, an award of attorneys fees and costs . . . equitable relief including reinstatement and restoration of employment, and any other equitable remedy that the Court deems reasonable and just." *See Compl.* ¶¶ 191, 204, 233. Under Count 7, Thomas' retaliation for good-faith reporting claim, she also seeks punitive damages. *Id.* ¶ 219. Even if Thomas amends her complaint to assert specific facts in support of her FMLA claims, she cannot seek punitive damages as they are not recoverable under the FMLA.[26] She can, however, request compensatory damages, as the statute specifically allows recovery of compensatory damages for any wages, salary, employment benefits, or other compensation lost by reason of the violation. *See* 29 U.S.C. § 2617(a)(1)(A) (including compensatory and liquidated damages, as well as equitable relief).

### E.     Remaining Claims Under the PHRA

Lastly, Count 16 of Thomas' complaint raises a claim under § 955(e) against all of the individual defendants.[27] That section makes it unlawful for "any person . . . to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice . . . ." 43 P.S. § 955(e). As previously noted, this subsection applies to "any person" as

---

[26] Thomas concedes that punitive damages and damages for emotional distress are not available under the FMLA. *See Pl.'s Br.* at 73.

[27] Again, Thomas stipulates that she is not entitled to punitive damages under the PHRA. Therefore, those portions of her PHRA claim seeking punitive damages shall be stricken.

24

opposed to "any employer," and therefore contemplates individual liability. However, only supervisors, as opposed to co-workers, can be liable under § 955(e), "on the theory that only the former can share the discriminatory purpose and intent of the employer that is required for aiding and abetting." *Carlton v. City of Phila.*, 2004 WL 633279, at *8 (E.D. Pa. Mar. 30, 2004).[28]

For the reasons discussed above, the only claim Thomas can pursue under the PHRA against St. Mary Medical Center is race discrimination, as set forth in Count 13 of her complaint. Therefore, the individual defendants could only be charged with aiding and abetting the alleged discriminatory practices surrounding Thomas' denial of promotion. As Thomas concedes, "Sibel is not alleged to have played a role in the denial of promotion." *Pl.'s Br.* at 81. Therefore, an aiding and abetting claim against defendant Sibel must be dismissed.

I find, for the reasons already discussed, that Thomas has not sufficiently exhausted her claims for race discrimination against defendant Marino. The claims against defendant Freiberg, however, are sufficiently exhausted. Moreover, I find that Thomas has sufficiently alleged that Freiberg was involved in and had some control over the promotion process and decision that serves as the basis for Thomas' race discrimination claim. Therefore, Count 16 remains against defendant Freiberg only.

An appropriate order follows.

---

[28] While it does not impact the outcome of my decision, plaintiff's attempt to suggest a different standard of individual liability applies under § 955(e), based on her tortured reading of the cases cited within her brief, is unavailing.